Bruce THOMPSON, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 49S00–8604–CR–393.

Supreme Court of Indiana.

Dec. 9, 1987.

Richard D. Gilroy, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Cheryl Greiner, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant Bruce Thompson was found guilty by a jury in the Marion Superior Court Criminal Division II of the crime of robbery, a class A felony, for which he received a sentence of twenty (20) years.

Three issues are presented for our review in this direct appeal:

1. sufficiency of the evidence;
2. prejudicial testimony involving an unrelated crime in Illinois; and
3. alleged incompetency of counsel.

The evidence shows that on October 27, 1984 victim David Rittmann lived in an area of Indianapolis called Broadripple. On that evening he left a bar in Broadripple and met four individuals in the parking lot. These individuals were identified as Kimberly Craig Hendricks, Defendant–Appellant Bruce Thompson, Jeff Prochnow, and Mike Spicer. These people stated they were from Illinois and asked Rittmann where there was another place to go. He directed them to a nightclub known as Piccadilly's and agreed to go with them. He first went back home with Hendricks to get his wallet and then met the others back in the parking lot. They drove to a gas station near the nightclub where Rittmann was separated from the others. He returned to his home in Broadripple by taxi. Very early the next morning the four individuals appeared at his home and he invited them into the apartment and gave them something to drink. Only Hendricks, Spicer, and Thompson were in the apartment when the incident occurred. While victim Rittmann was conversing with Spicer and Thompson, one of them stated he needed money to go back home. He then pulled a metal rod from his jacket and began to beat Rittmann with it. Kimberly Hendricks testified that Thompson and Spicer both beat Rittmann until he was unconscious. Rittmann had several teeth broken and knocked out; he was struck on the trunk area of his body and suffered blows to the head causing a skull fracture and concussion. These injuries left visible scars. Rittmann was taken to the hospital in an ambulance in a state of unconsciousness and spent six days in the hospital. Upon his return home, Rittmann discovered a Lanier record player, a pre-amplifier, a power-amplifier and a guitar were missing. He was able to give the police descriptions and serial numbers of these items. A neighbor of Rittmann, Fred Redman, testified he was awakened about 4:30 a.m. on October 28, 1984, heard an argument and loud noises, and saw a woman and some male subjects place several items, including an electric guitar, in a Pinto station wagon in the apartment complex alley. Fingerprints lifted from a drinking glass at Rittmann's home were found to be those of Appellant Thompson.

I

Thompson's claim there was insufficient evidence to convict him of robbery is based on the fact Rittmann was unable to identify him or any of the other perpetrators of this crime and that the testimony of Kimberly Craig Hendricks was unreliable because she had entered into a plea agreement with the State to gain her cooperation. It is not necessary, of course, that Rittmann be able to identify Thompson if there is otherwise sufficient evidence before the trier of fact. Hendricks informed the jury she entered into a plea agreement with the State for which she received a lesser penalty and which required her to testify on the State's behalf. She testified she observed Thompson and Spicer beat Rittmann into unconsciousness and saw the two of them take Rittmann's stereo equip-

ment and guitar out to the Pinto station wagon. Neighbor Fred Redman saw a bag of items and an electric guitar placed in the station wagon in the alley but was unable to identify the individuals. Bloomington, Illinois police recovered Rittmann's property in Spicer's apartment in Bloomington. Thompson's fingerprints were found on a glass in Rittmann's home. Questions of the witness' credibility and weight of the evidence presented are for the trier of fact and not the reviewing court. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670, 672. We look only to those facts most favorable to the verdict and all reasonable inferences drawn therefrom. If there is substantial evidence of probative value to support the conviction, it will not be disturbed. *Id.* The facts stated above are sufficient for the jury to find beyond a reasonable doubt Thompson did in fact commit robbery.

## II

■ Thompson next claims he was prejudiced by the testimony of Bloomington, Illinois Officer Mark Bagnell. Bagnell answered only five questions when he was dismissed from the stand. He stated he investigated a burglary in Bloomington, Illinois which occurred on October 31, 1984. A silver place setting was taken in that burglary. Defense counsel objected to this testimony. The objection was sustained on the basis of irrelevancy and the witness withdrawn. We are given no information as to the purpose of the witness' proposed testimony although it appears the State attempted to show this crime was of a similar, unusual, and distinctive nature that would earmark it as having a common perpetrator. *See Hobbs v. State* (1984), Ind., 466 N.E.2d 729, 733. Thompson's appellate brief infers the crime in Illinois actually was committed by one of the other individuals and not Thompson. The fact remains, however, there was no further testimony from Officer Bagnell about this crime other than that he investigated it. Thompson claims there was an inference he committed an additional crime and this prejudiced him before the jury. There is no doubt there was some inference Thompson was somehow involved with this crime.

However, no details regarding the crime were given, and no one ever stated Thompson committed it. It does not appear under all the circumstances of this cause that prejudice to Thompson was sufficient to merit reversal of his conviction. There was direct probative evidence connecting Thompson with the commission of the present crime. Witnesses testified against him and his fingerprints were found at the scene. We may not presume, in light of all the evidence presented at trial, that a brief reference to an Illinois burglary, with nothing further, so influenced the jury that it found Thompson guilty. *See generally, Bradford v. State* (1983), Ind., 453 N.E.2d 250. Any error therefore was harmless.

## III

■ Finally, Thompson claims he received ineffective assistance of counsel. Our standards for reviewing this issue are well settled. We first decide whether counsel's performance was so deficient he or she was not functioning as counsel as guaranteed by the Constitution, and second, whether any failure to function as counsel was prejudicial to the defendant to the extent it deprived him of a fair trial. It must be shown there was a breakdown in the adversarial process that rendered the result unreliable. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh. denied* (1984), 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864; *Broadus v. State* (1986), Ind., 487 N.E.2d 1298, 1304. In our review we will not speculate as to what would have been advantageous strategy nor do we find instances of isolated poor strategy necessarily indicate ineffective assistance. *Berry v. State* (1985), Ind., 483 N.E.2d 1369, 1372; *Jackson v. State* (1985), Ind., 483 N.E.2d 1374, 1378.

Thompson challenges his attorney's cross-examination of certain witnesses, his failure to request a mistrial, and his failure to offer any evidence on Thompson's behalf. In other words, he challenges his attorney's strategy or judgment in trial tactics. The record reveals Thompson's counsel adequately cross-examined the witnesses against him. Also, while he did not

request a mistrial regarding the mention of the burglary, counsel did properly object, and the objection was sustained. Defense counsel effectively cut off introduction of irrelevant testimony. Finally, Thompson does not indicate what evidence there was to offer in his behalf that his counsel failed to present. He makes no claim he had an alibi defense; testimony at trial and evidence from the scene place him there at the time in question. Defense counsel can do no more than work with the existing evidence and it appears counsel represented Thompson well in view of the overwhelming evidence against him.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.